1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   PAUL SPECTOR,                     No. 2:23-cv-02950 WBS DB

13              Plaintiff,

14        v.                           MEMORANDUM AND ORDER RE:
                                       MOTION TO DISMISS FIRST
15   NG & MG INVESTMENTS LLC dba       AMENDED COMPLAINT
     OUTSIDE INN,
16
                Defendant.
17

18                         ----oo0oo----

19
            Plaintiff Paul Spector brought this action against
20
     defendant NG & MG Investments, LLC, doing business as Outside
21
     Inn, alleging violations of the Americans with Disabilities Act
22
     ("ADA"), 42 U.S.C. § 12101 et seq., and the Unruh Civil Rights
23
     Act.  (First Am. Compl. ("FAC") (Docket No. 10).)  Defendant
24
     moves to dismiss plaintiff's ADA claim on the grounds that he
25
     lacks standing and has failed to state a claim.  (Docket No.
26
     11.)[1]
27

28        _____

          [1]    Defendant does not move to dismiss the Unruh Act claim.

                                1

1   I.    Factual and Procedural Background[2]

2          Plaintiff was in a serious car accident in 2012 that

3   left him with pain and weakness in his left knee and has

4   arthritis, which interfere with his ability to walk, balance, and

5   stand.  (FAC ¶ 11.)  He has a trained service dog named

6   "Kokobat," nicknamed "Koko," to assist with these impairments.

7   (See id.)  Plaintiff has had Koko for two years and typically

8   takes Koko with him whenever he is in public.  (Id. ¶¶ 14, 17.)

9          On December 6, 2023, plaintiff and his partner traveled

10  to Nevada City with Koko.  (Id. ¶ 18.)  They sought to stay the

11  night at the Outside Inn, a hotel located in Nevada City,

12  California, and went there to inquire about room rates and

13  availability.  (See id. ¶¶ 19-20.)  The employees told plaintiff

14  that the only available room, "The Cabin," did not allow dogs in

15  order to maintain a room suitable for individuals with dog

16  allergies.  (Id. ¶ 20.)  The Outside Inn has a total of fifteen

17  rooms, but The Cabin is unique among them because it is a

18  separate structure with a private entrance and a private deck.

19  (See id. ¶ 21.)  Because he was denied accommodation at Outside

20  Inn, plaintiff sought accommodation elsewhere in Nevada City.

21  (Id. ¶ 23.)  However, there were no other rooms available in

22  Nevada City due to a festival occurring that day, and plaintiff

23  and his partner instead sought accommodation in a different city.

24  (See id. ¶ 22-23.)

25  II.   Amended Versus Supplemental Pleading

26          Rule 15(d) provides that "[o]n motion and reasonable

27  _____

28          [2]    All facts recited herein are as alleged in the First
    Amended Complaint.

notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Amended pleadings "relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading," while supplemental pleadings "deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." Charles Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1504 (3d ed.); see also Eid v. Alaska Airlines, Inc., 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed.").

Defendant argues that plaintiff's allegations in support of standing, addressed in greater detail below, were improperly included in the First Amended Complaint because they concern actions that plaintiff took following the initiation of the action. Defendant's point is well taken. If plaintiff's efforts to bolster his standing occurred following the filing of the initial complaint, allegations concerning those efforts must be treated as a supplemental rather than amended pleading. Exercising its "broad discretion in allowing supplemental pleadings . . . [as] a tool of judicial economy and convenience," the court will consider plaintiff's supplemental standing allegations in ruling on this motion. See Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988).

3

1    III. <u>Standing</u>

2              Federal Rule of Civil Procedure 12(b)(1) governs

3    motions for lack of subject matter jurisdiction.  <u>See</u> Fed. R.

4    Civ. P. 12(b)(1).  To have standing to sue in federal court, a

5    plaintiff must have "(1) suffered an injury in fact, (2) that is

6    fairly traceable to the challenged conduct of the defendant, and

7    (3) that is likely to be redressed by a favorable judicial

8    decision."  <u>See</u> <u>Spokeo v. Robbins</u>, 136 S. Ct. 1540, 1547 (2016)

9    (internal citations omitted).  In the context of injunctive

10   relief, plaintiff must additionally demonstrate "a sufficient

11   likelihood that [she] will again be wronged in a similar way."

12   <u>Fortyune v. Am. Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1081 (9th Cir.

13   2004).  The party invoking federal jurisdiction must establish

14   each element with the manner and degree of evidence required at

15   the successive stages of the litigation.  <u>See</u> <u>Carrico v. City and</u>

16   <u>Cnty. of San Francisco</u>, 656 F.3d 1002, 1006 (9th Cir. 2011).

17   Accordingly, at the motion to dismiss stage, the court will base

18   its analysis on plaintiff's First Amended Complaint, which the

19   court accepts as true.  <u>See</u> <u>id.</u>

20             To demonstrate standing under Title III of the ADA

21   (under which injunctive relief is the only available remedy), a

22   plaintiff must "demonstrate the familiar requirements for

23   standing -- injury-in-fact, traceability, redressability" -- as

24   well as "'a sufficient likelihood that he will be wronged again

25   in a similar way.'"  <u>See</u> <u>Ervine v. Desert View Reg'l Med. Ctr.</u>

26   <u>Holdings, LLC</u>, 753 F.3d 862, 867 (9th Cir. 2014) (quoting

27   <u>Fortyune v. Am. Multi-Cinema</u>, 364 F.3d at 1081).  "That is to

28   say, he must show he faces a 'real and immediate threat of

                                    4

1   repeated injury.'"  Id. (quoting O'Shea v. Littleton, 414 U.S.

2   488, 496 (1974)).  "An ADA plaintiff establishes such a real and

3   immediate threat if 'he intends to return to a noncompliant place

4   of public accommodation where he will likely suffer repeated

5   injury.'"  Id. (quoting Chapman v. Pier 1 Imports (U.S.) Inc.,

6   631 F.3d 939, 948 (9th Cir. 2011)).  "Alternatively, a plaintiff

7   who 'has visited a public accommodation on a prior occasion'

8   demonstrates a real and immediate threat if he 'is currently

9   deterred from visiting that accommodation by accessibility

10  barriers.'"  Id. (quoting Doran v. 7-Eleven, Inc., 524 F.3d 1034,

11  1041 (9th Cir. 2008)).

12      A.   Injury-in-Fact

13           The court first notes that plaintiff has adequately

14  alleged that defendant's exclusion of plaintiff's service dog

15  from The Cabin constituted discrimination under the ADA, thereby

16  establishing an injury-in-fact.  In reaching this conclusion, the

17  court relies on guidance from the U.S. Department of Justice

18  ("DOJ") interpreting the ADA's implementing regulations, which is

19  "entitled to significant weight."  See Fortyune v. City of

20  Lomita, 766 F.3d 1098, 1104 (9th Cir. 2014).

21           According to DOJ's guidance concerning service animals:

22      Allergies and fear of dogs are not valid reasons for denying
        access or refusing service to people using service animals.
23      When a person who is allergic to dog dander and a person who
        uses a service animal must spend time in the same room or
24      facility, for example, in a school classroom or at a
        homeless shelter, they both should be accommodated by
25      assigning them, if possible, to different locations within
        the room or different rooms in the facility.
26

27  Dep't of Justice, ADA Requirements: Service Animals,

28  https://www.ada.gov/resources/service-animals-2010-requirements/

1  (updated Feb. 28, 2020).

2        Another DOJ publication further explains that hotels

3  may not "assign designated rooms for guests with service animals"

4  or restrict them to "pet-friendly" rooms "out of consideration

5  for other guests" because a "guest with a disability who uses a

6  service animal must be provided the same opportunity to reserve

7  any available room at the hotel as other guests without

8  disabilities."  See Dep't of Justice, Frequently Asked Questions

9  about Service Animals and the ADA ("DOJ FAQ"),

10 https://www.ada.gov/resources/service-animals-faqs/ (updated Feb.

11 28, 2020) (emphasis added).  Defendant's alleged conduct in

12 refusing to rent an available room to plaintiff because of his

13 service dog contravenes this guidance.

14        B.   Threat of Future Injury

15        Defendant argues that plaintiff has failed to establish

16 a real and immediate threat of future injury.  This argument is

17 unavailing.  Plaintiff has pled that he plans to visit Nevada

18 City from December 15th through 17th, 2024, and has booked The

19 Cabin at the Outside Inn for those dates.  (FAC ¶¶ 6, 24.)  He

20 alleges that he wants to stay at The Cabin because he is

21 interested in the unique features of the room and wants to be

22 able to select from any of the Outside Inn's rooms, in the same

23 manner as individuals without service dogs.  (Id. ¶ 6.)

24 Plaintiff says he believes he will be denied his reserved

25 accommodation when he visits the Outside Inn because he is

26 unaware of any change to the service dog policy (see id. ¶¶ 6-7,

27 24) and defendant has not indicated to the court that it has

28 changed its policy such that plaintiff and his service dog would

be permitted to stay at The Cabin.  Plaintiff states that he "is deterred from returning to the hotel until [the service dog policy is changed] but will keep his specific plans for traveling to the Outside Inn on the presumption they will change their policy and follow the law, or that the Court will order them to do so before then."  (Id. ¶ 24.)

At the motion to dismiss stage, these allegations are sufficient to establish standing under the ADA.  See Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002) (ADA plaintiff had standing where he stated that he "ha[d] visited [defendant's establishment] in the past," "ha[d] actual knowledge of the barriers to access" at that location, and "prefers" to patronize that type of establishment and would do so in the future "if it were accessible"); cf. Ervine, 753 F.3d at 868 (ADA plaintiff lacked standing where he had "never been a patient" of defendant medical office and "ha[d] no imminent plans to return"); Grechko v. Calistoga Spa, Inc., No. 22-15295, 2023 WL 2755323, at *1 (9th Cir. Apr. 3, 2023) (affirming dismissal for lack of standing where ADA plaintiff alleged that she had frequented defendant's business "for many years" and had "always requested and received" the accommodation at issue, and thus failed to allege any "real and immediate threat" that the accommodation would be denied in the future).

That plaintiff could choose to book one of defendant's other "dog-friendly" rooms does not defeat standing, as "it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way."  See Chapman, 631 F.3d at 947.  "Rather, the barrier

need only interfere with the plaintiff's 'full and equal enjoyment' of the facility." Id. (quoting 42 U.S.C. § 12182(a)). See also DOJ FAQ (a hotel guest with a service animal "must be provided the same opportunity to reserve any available room at the hotel as other guests without disabilities") (emphasis added). At issue here is a room that is allegedly singularly unique compared to the others available in the hotel (see FAC ¶ 21), which indicates that booking one of the other available rooms would not provide plaintiff with the opportunity for full and equal enjoyment.

Based on the foregoing, the court concludes that plaintiff has pled sufficient facts to establish standing under the ADA.

IV.   Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has stated "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although legal conclusions "can provide the framework of a complaint, they must

8

1   be supported by factual allegations." Id. at 679.

2           To succeed on a discrimination claim under Title III of
3   the ADA, a plaintiff must show that "(1) he is disabled within
4   the meaning of the ADA; (2) the defendant is a private entity
5   that owns, leases, or operates a place of public accommodation;
6   and (3) the plaintiff was denied public accommodation by the
7   defendant because of his disability." See Arizona ex rel.
8   Goddard v. Harkins Amusement Enters., 630 F.3d 666, 670 (9th Cir.
9   2011).

10          Discrimination by a place of public accommodation under
11  the ADA includes, inter alia, "a failure to take such steps as
12  may be necessary to ensure that no individual with a disability
13  is excluded, denied services, segregated or otherwise treated
14  differently than other individuals because of the absence of
15  auxiliary aids and services," unless such steps "would
16  fundamentally alter" the nature of the goods, services, or
17  privileges being offered or "would result in an undue burden."
18  42 U.S.C. § 12182(b)(2)(A)(iii).

19          Defendant argues that plaintiff has failed to allege
20  sufficient facts under the first and third prongs.  Defendant
21  also argues that plaintiff's ADA claim fails because relief would
22  require a fundamental alteration to its business.

23      A.   Disability

24          Defendant argues that plaintiff does not have a
25  qualifying disability.  An individual is disabled within the
26  meaning of the ADA when she has "a physical or mental impairment
27  that substantially limits one or more major life activities," has
28  "a record of such an impairment," or "[is] regarded as having

9

such an impairment."  42 U.S.C. § 12102(1).  Examples of "major
life activities" include "caring for oneself, performing manual
tasks, seeing, hearing, eating, sleeping, walking, standing,
lifting, bending, speaking, breathing, learning, reading,
concentrating, thinking, communicating, and working."  Id. §
12102(2)(A).  "An impairment that substantially limits one major
life activity need not limit other major life activities in order
to be considered a disability."  Id. § 12102(4)(C).  An
impairment's effect is analyzed "[in comparison] to most people
in the general population.  [It] need not prevent, or
significantly or severely restrict, the individual from
performing a major life activity in order to be considered
substantially limiting."  See Weaving v. City of Hillsboro, 763
F.3d 1106, 1111 (9th Cir. 2014) (quoting 29 C.F.R. §
1630.2(j)(1)(ii)).

        According to the First Amendment Complaint, plaintiff
"was injured in a very serious car accident in 2012 which left
him with residual pain and weakness in his left knee and
arthritis, all of which cause him difficulty in walking,
balancing, and standing for long periods of time."  (FAC ¶ 11.)
"While he can walk independently, [his] knee can give out while
he is walking which could cause him to fall down."  (Id.)

        "Walking" and "standing" are both considered major life
activities under the ADA.  See 42 U.S.C. § 12102(2)(A).  Whether
plaintiff is in fact "substantially limited" in those activities
will ultimately have to be decided by the trier of fact.  At this
stage of the proceedings, however, plaintiff has adequately met
his burden of pleading that he is disabled within the meaning of

1  the ADA by alleging that he has "difficulty" walking and

2  standing, as a result of which he falls down more frequently than

3  the general population and needs assistance with those activities

4  (from his service dog).  (See FAC ¶ 11.)

5       B.   Causation

6       Defendant argues that plaintiff has failed to plead

7  that he was denied public accommodation by reason of his

8  disability because he has not adequately alleged that Koko is a

9  true service dog.

10      Federal law defines a "service animal" as "any dog that

11 is individually trained to do work or perform tasks for the

12 benefit of an individual with a disability, including a physical,

13 sensory, psychiatric, intellectual, or other mental disability."

14 28 C.F.R. § 36.104.

15      According to the First Amended Complaint:

16      Plaintiff relies upon his service dog [Koko] to assist him
        with certain tasks including pulling him upstairs and hills
17      while they are walking that reduce his chances of falling.
        He also can assist Plaintiff with stabilizing his balance.
18      Koko has been trained to walk on Plaintiff's left side, and
        when [Plaintiff's] knee begins to weaken, Koko leans his
19      considerable weight against Plaintiff and allows him to lean
        against Koko which provides Plaintiff with necessary
20      stability and support to take some pressure off of his weak
        left knee.  Additionally, Koko is trained to assist
21      Plaintiff in getting down to the floor and back up when he
        needs to retrieve dropped objects.  Koko was professionally
22      trained to be a service dog.

23 (FAC ¶ 11.)

24      Taken as true, plaintiff's allegations establish that

25 his dog assists with (1) "retrieving items" and (2) "providing

26 physical support and assistance with balance and stability,"

27 which are considered qualifying "tasks for the benefit of an

28 individual with a disability" under the governing regulations.

1   See 28 C.F.R. § 36.104.  Accordingly, the court concludes that

2   plaintiff has sufficiently pled that he uses a qualified service

3   animal.

4        C.   Fundamental Alteration

5             Finally, defendant argues that plaintiff's requested

6   modification of allowing service dogs into The Cabin would

7   constitute a fundamental alteration not required by the ADA.

8   Generally, "the determination of what constitutes reasonable

9   modification is highly fact-specific, requiring case-by-case

10  inquiry."  Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir.

11  1996).  "Whether an accommodation fundamentally alters a service

12  or facility is an affirmative defense," Lentini v. Cal. Ctr. for

13  the Arts, Escondido, 370 F.3d 837, 845 (9th Cir. 2004), and

14  "ordinarily, affirmative defenses may not be raised on a motion

15  to dismiss," U.S. Commodity Futures Trading Comm'n v. Monex

16  Credit Co., 931 F.3d 966, 972 (9th Cir. 2019) (cleaned up).

17            Accordingly, "[c]ase law and ADA regulations underscore

18  that whether a requested policy modification or auxiliary aid or

19  service would result in a fundamental alteration or undue burden

20  is . . . inappropriate for disposition prior to discovery."

21  Martinez v. County of Alameda, 512 F. Supp. 3d 978, 985 (N.D.

22  Cal. 2021) (citing, inter alia, 28 C.F.R. § 35.164; Lentini, 370

23  F.3d at 845).  The court therefore declines to address the issue

24  of fundamental alteration at this stage of the proceedings.[3]

---

25            [3]   Even if the court were to address the fundamental

26  alteration defense at this stage, defendant has offered only bare
    legal assertions on the issue and has not established that a

27  hotel not having a dog allergy-specific room would on its face
    constitute a fundamental alteration such that dismissal is

28  appropriate.

1          IT IS THEREFORE ORDERED that defendant's motion to

2    dismiss (Docket No. 11) be, and the same hereby is, DENIED.

3    Dated:  April 30, 2024

4                                   WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   13